IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DONALD HILL § § v. § § Case No. 2:20-cv-376-RSP COMMISSIONER, SOCIAL § SECURITY ADMINISTRATION | |

**MEMORANDUM RULING**

On October 6, 2020, Administrative Law Judge Derek N. Phillips issued a decision finding that Petitioner Donald O'Keith Hill was not disabled within the meaning of the Social Security Act from October 30, 2017 through the date of the decision. Mr. Hill, who was 41 with an eleventh grade education at that time, was found to be suffering from severe impairments consisting of obesity, coronary artery disease, hypertension, hyperlipidemia, and type 2 diabetes. These impairments resulted in some restriction on his ability to work, and he had not engaged in any substantial gainful activity since at least October 30, 2017. Before that time he had worked as an industrial truck operator, a tractor operator, and a grinder, for Pilgrim's Pride and others. He was unable to return to that type of work

After reviewing the medical records and receiving the testimony at the September 15, 2020, telephone hearing at which Petitioner was represented by his counsel Gregory Ross Giles, the ALJ determined that Petitioner had the residual functional capacity to perform less than the full range of light work, which includes the ability to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. In an 8-hour workday, he can sit, stand, and/or walk for 6 hours. He can only frequently reach overhead with his left arm and can only occasionally climb ladders, ropes,

and scaffolds, and frequently climb ramps and stairs. He can occasionally crawl, and can frequently balance stoop, kneel, and crouch, and work at unprotected heights. He can tolerate occasional exposure to dust, odors, fumes, and other pulmonary irritants, and extreme heat and cold. He will be off task 5% of the workday in addition to normal breaks.

Relying upon the testimony of a vocational expert, Jennifer A. Stone, the ALJ determined that Petitioner lacked the capacity to perform his past relevant work. However, the ALJ concluded that Petitioner did have the capacity to perform jobs that exist in significant numbers in the national economy such as cafeteria attendant, ticket taker, and office helper. Tr. 22. This finding resulted in the determination that Petitioner was not entitled to Social Security Disability benefits. Petitioner appealed this finding to the Appeals Council, which denied review on November 12, 2020. Petitioner timely filed this action for judicial review seeking remand of the case for award of benefits.

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. See *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994), cert. denied, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). Substantial evidence is more than a scintilla, but can be less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995). A finding of no substantial evidence will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir.1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir.1983)). In reviewing the

substantiality of the evidence, a court must consider the record as a whole and "must take into account whatever in the record fairly detracts from its weight." *Singletary v. Bowen,* 798 F.2d 818, 823 (5th Cir.1986).

Petitioner raises four issues on this appeal:

1. The ALJ erred in his analysis of Plaintiff's coronary artery disease under Listing 4.04;

2. The ALJ erred in discrediting the Plaintiff's intensity, persistence and limiting effects of his symptoms;

3. The ALJ's assessment of Plaintiff's residual functional capacity is premised on a hypothetical that was deficient and did not include all of Plaintiff's limitations; and

4. The ALJ erred in discrediting the opinion of Plaintiff's treating cardiologist, consultative examinations and nurse practitioner, Luke Range.

*Issue No. 1:*

Petitioner argues that the ALJ supported the finding that Listing 4.04 was not met by "misstating facts in evidence." Dkt. No. 18 at 5. "The ALJ said Plaintiff returned to work operating heavy equipment. That statement is wrong." *Id*. While it is true that the ALJ did not include a record cite to support that statement, the ALJ did link it to the April 2, 2018, visit to UT Health in Tyler. Tr. 20. That record is found at page 649 of the record and states:

> "Patient informs that he is feeling better. Patient denies shortness of breath, palpitation or syncope. *He has returned to working his prior duty and operates heavy equipment*. He has had rare episodes of substernal chest pain that resolves with SL NTG [sublingual nitroglycerin]. Patient denies edema in the feet." Tr. 649 (emphasis supplied)

Petitioner also disputes the ALJ's statement that Dr. Itum, who was asked to perform a consultative physical examination, "was largely unable to do so, due to Claimant's lack of *cooperation*." Tr. 20 (emphasis supplied). It is true that Dr. Itum actually said that she "was not

3

able to perform many of the components of the physical exam due to lack of the claimant's *effort* …." Tr. 831 (emphasis supplied). Dr. Itum went on to clarify that she thought the lack of effort was due to Petitioner's "feeling a little short of breath." However, the ALJ's point was not about whether Petitioner was malingering, it was that Dr. Itum's examination was incomplete and her findings were thus not fully credible. The Court does not find that the ALJ misstated the evidence. The question remains whether substantial evidence supports the ALJ's determination that Listing 4.04 was not met.

The Social Security Administration has developed a lengthy list of impairments that it considers serious enough to prevent a person from performing any gainful activity. This Listing of Impairments ("Listings") appears at 20 C.F.R. Part 404, Subpart P, Appendix 1. When a claimant's impairments match an impairment on the list, the claimant is automatically entitled to disability benefits. *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 889 (1990). The criteria for the Listings are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). As the Supreme Court has noted, "for a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan, supra* at 891 (emphasis in original).

Listing 4.04C, which is the listing apparently relied upon by Petitioner in brief, addresses coronary artery disease and requires both certain angiographic evidence *and* that the disease results "in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living." 20 C.F.R. 404.1520(d) Subpart P, Appendix 1. The ALJ found that the "medical evidence does not indicate serious limitations in his ability to perform daily activities of living."

Tr. 18. While the ALJ's analysis of Listing 4.04 was limited, that was likely due to the fact that during the administrative proceedings "Claimant has advanced no argument to the effect he meets or medically equals a listed impairment." Tr. 18. Nonetheless, the ALJ did proceed to make the finding quoted above. One of the key activities of daily living is work, and there was medical evidence that had returned to work during the relevant period, in 2018. Furthermore, Dr. David Grant, Ph.D., the consultative psychological examiner, noted that "Mr. Hill stated that he does household chores like cleaning his room and washes dishes. He indicated that he can dress himself and care for his personal hygiene." Tr. 822-823. The ALJ noted these findings. Tr. 17. Dr. Grant also reported that Petitioner "drove himself to the assessment." Tr. 819. Against this evidence, Petitioner relies on the fact that Dr. Samantapudi Daya, the cardiologist who performed a May 2018 cardiac catheterization, recommended "aggressive lifestyle modification." Tr. 598. This appears to be an understandable reference to Petitioner's obesity and cigarette smoking.

 Petitioner also cites the work restrictions found by Dr. Itum, that the ALJ discounted due to the incomplete nature of her examination discussed above. The primary limitation that Dr. Itum noted that would carry over into activities of daily living is the limitation "with walking due to congestive heart failure." However, importantly for this context, Dr. Itum also noted that Petitioner "does not need an assistive device with regards to short and long distances and uneven terrain." It is reasonable to conclude from this finding that the walking limitation does not constitute a serious limitation on daily living activities. It also bears noting that Petitioner bore the burden of showing that he met the requirements of a listing at step 3.

The Court finds that there is substantial evidence in the record to support the ALJ's finding that Listing 4.04C is not met because Petitioner does not have serious limitations on his ability to perform activities of daily living.

*Issue No. 2:*

Petitioner contends in this issue that the ALJ discounted the credibility of his testimony regarding pain and other symptoms without proper explanation. The Commissioner concedes that while the ALJ has great discretion in weighing the evidence and determining credibility, there are parameters governing those findings. For instance, in Social Security Ruling 96-7, the Commissioner clarified that:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

A review of the ALJ's opinion, especially at pages 3 and 6 to 8, shows that the ALJ did perform the required analysis of the record and give the specific reasons for his credibility determination. Furthermore, the Court has carefully reviewed Petitioner's testimony and finds that he did regularly exaggerate his symptoms. For example, he testified that he could not drive, while Dr. Grant noted that he drove himself to the exam. He also testified he had not worked since 2017, while the told his doctors that he had returned to work in 2018. When Petitioner went to his psychological examination on July 25, 2018, he "appeared to be actively hallucinating and was arguing with voices," reported that "he hears voices all the time constantly" and "he appeared to

6

be actively psychotic and got angry at the voices." However, he "has no apparent physical difficulties that were observed." Tr. 819-820. Three days later, at his July 28, 2018, physical exam by Dr. Itum, he reported "chest pain at both rest and exertion … stabbing, crushing pressure in the chest that is radiating in nature," he experienced pain intensity of "10/10 on most days," but was noted to be "in no acute distress." The Court finds that the record amply supports the ALJ's finding that the Petitioner's complaints of disabling symptoms were not fully credible.

*Issues Nos. 3 and 4:*

Both of these issues deal with whether the ALJ had a proper basis to discount the opinions of consultative physical examiner Dina Itum, M.D. and Nurse Practitioner Luke Range. The Fifth Circuit has long held that "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir.1985). However, "[T]he ALJ has the sole responsibility for determining the claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990). Thus, the Fifth Circuit has held that:

> "when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence."

*Scott v. Heckler*, 770 F.2d 482 at 485 (5th Cir. 1985).

The ALJ found unpersuasive consultative examiner Dr. Itum's opinion that Plaintiff was severely limited with respect to walking, lifting, and carrying. The ALJ noted that Dr. Itum was unable to complete many examination tests and findings because of Plaintiff's noncompliance or

minimal interaction. The doctor noted "I was not able to perform many of the components of the physical exam due to lack of the claimant's effort, although I do not think that this lack of effort was conscious." Tr. 831. In fact, Dr. Itum noted that "lifting, carrying and handling was unable to be evaluated," casting doubt on her opinion that Petitioner had severe limitations with lifting and carrying. Tr. 829. Similarly, while opining that Petitioner had severe limitations with walking, she also observed that he "had a steady and symmetric gait" and "tandem walking was normal." Tr. 829. A review of Dr. Itum's report shows that so much of her normal examination was missing because of Petitioner's lack of cooperation, that the ALJ's decision to discount it was well supported, especially the opinions about lifting, carrying, and walking.

The other opinion that the ALJ partially discounted was the February 18, 2019, form regarding "Ability to Do Work-Related Activities (Physical)" filled out by Nurse Practitioner Luke Range of UT Health in Tyler. Tr. 877. The lift and carry limitations were the same as those assigned by the ALJ in his RFC. However, sitting was limited to about 4 hours and standing and walking was limited to less than 2 hours. He also found Petitioner would need at least 10 extra breaks in the workday, while the ALJ limited such "off task" time to 5% of the workday. The Nurse Practitioner did not limit reaching at all, whereas the ALJ limited reaching overhead with the left arm. Both the ALJ and the Nurse Practitioner imposed environmental limitations. The ALJ discounted parts of Mr. Range's assessment as "inconsistent with Claimant's examinations in Mr. Range's clinic, and also lack support in the objective evidence of record." Tr. 21. He then went on to cite the opinion of State agency medical consultant Leigh McCary, M.D., who opined that Petitioner could perform the full range of light work. Tr. 177-179. Mr. Range is not a physician, let alone a treating physician, so his opinions do not carry the same weight.

8

Furthermore, there is support in the record for the ALJ's conclusion that Mr. Range's assessment of the walking limitation was inconsistent with his clinical findings. In November 2018, Mr. Range's treatment notes show that Petitioner denied shortness of breath, muscle weakness, chest pain, palpitations, syncope, and peripheral edema. Tr. 864. His exam showed that Petitioner had regular heart rate and rhythm, no edema, and no decreased range of motion in the extremities. Similar results were noted in July 2019. Tr. 962-963. These clinical findings do not support the extent of disability suggested by the greater functional limitations.

Giving proper effect to the deference acknowledged in *Scott v. Heckler*, the Court finds that substantial evidence in the record supports the residual functional capacity determination of the ALJ, and that the hypothetical posed to the vocational expert properly captured that determination.

*Conclusion:*

Having found that the record supports the finding of the ALJ, the decision of the Commissioner is affirmed and this action will be DISMISSED.

**SIGNED this 18th day of November, 2022.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE